UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRC Innovations, Inc., | ) | CASE NO. 1: 12 CV 684 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Hunter MFG., LLP, and | ) | **Memorandum of Opinion and Order** |
| CDI International, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This is an action for patent infringement.  Pending before the Court is Plaintiff's

Motion for Preliminary Injunction. (Doc. 2.)  For the reasons stated below, the motion is

denied.

**Facts**

Plaintiff MRC Innovations, Inc. (MRC) is an Ohio corporation with its principal place

of business in Mason, Ohio.  Mark Cohen is the owner of MRC.  "MRC has built a

foundation of solution finding techniques and serves its customers through global resources."

(Aff. of Mark Cohen, ¶ 2.)  "As part of its service, MRC provides innovative designs to

retailers, distributors and/or dealers for various consumer products which allow its customers

to meet the challenges in their respective marketplace."  (*Id.*)  "MRC has taken steps to

protect its innovative designs and owns intellectual property rights." (*Id.*)

MRC is the owner of U.S. Design Patent No. D634,488 (the '488 Patent), entitled "Football Jersey for a Dog," issued by the United States Patent and Trademark Office (USPTO) on March 15, 2011, upon an application filed on September 8, 2010.  Cohen is the named inventor of the '488 Patent.  The '488 Patent claims an ornamental design for a football jersey for a dog made of primarily mesh and interlock fabric as shown and described in the patent.  (*See* '488 Patent, Ex. A to Complaint, Figs. 1-4.)

Defendant Hunter MFG., LLP (Hunter) is a retailer having its principal place of business in Lexington, Kentucky.  For over twenty years, Hunter has been selling licensed sports consumer products.  Hunter has licences with the National Football League (NFL), Major League Baseball, National Hockey League, NASCAR, and the National Collegiate Athletic Association (NCAA) to sell licensed goods.  One product available from Hunter licensed by the NFL is pet jerseys, specifically, pet jerseys for dogs.  MRC alleges that pet jerseys shown on Hunter's website ([www.huntermfg.com](www.huntermfg.com)) as available from Hunter for sale are substantially the same and infringe the design claimed in the '488 Patent.

Hunter, however, submits the affidavit of its President, Thomas Neth, who states that Hunter has been selling pet jerseys since at least as early as 2006.  (Neth Aff., ¶ 5.)  Neth states: "Beginning in September 2007, Stephen Gould Corporation ("Gould") manufactured pet jerseys that were sold to Hunter."  Neth asserts, upon information and belief, that Mark Cohen was employed by Gould at that time.  (*Id.* at ¶¶ 8, 10.)  A pet jersey specified by Hunter for Gould to manufacture in December 2007 is attached to Neth's affidavit as Exhibit 2.  (Neth Aff., Ex. 2.)  Neth states that pet jerseys identical to the jersey depicted in Exhibit 2

were sold by Gould to Hunter, and sold by Hunter to third party retailers, prior to September 8, 2009.  (*Id.* at ¶¶ 12, 13.)

In addition, Neth states that photographs of a pet jersey sold by Hunter prior to September 8, 2009 are depicted in exhibits 4-6 of Neth's affidavit.  (*Id.*, ¶ 16.)

In 2009, Hunter contracted with Fun In Games (FiG), a sister corporation to MRC, to manufacture pet apparel for Hunter to be offered for sale by third party retailers.  (Cohen Aff., ¶ 7; Neth Aff., ¶ 14.)  Cohen states that he, "through MRC, and on behalf of FiG, created and designed a football jersey for a dog and filed for patent protection for the same in September 2010."  In addition, Cohen asserts that, "[i]n September 2010[,] MRC granted FiG a non-exclusive license to have manufactured and to sell dog apparel, and specifically, pet jerseys under the '488 Patent of MRC."  (Cohen Aff., ¶ 7.)  Cohen states that "[o]ne example of the pet jerseys designed by MRC, manufactured for FiG on behalf of Hunter, sold by Hunter via a third party retailer, and covered by the '488 patent is depicted in the photos" attached as Exhibit E to its complaint. (Cohen Aff., ¶ 3.)

The relationship between Hunter and FiG terminated in 2010.  Neth states that Cohen contacted him by electronic mail on December 2, 2010, indicating Cohen's desire to terminate the relationship.  (Neth Aff., ¶ 15.)  Cohen states that "Hunter advised FiG that it contracted with another distributor for the manufacture of the pet jerseys," and "directed FiG to deliver all remaining stock of pet jerseys to Hunter."  (Cohen Aff., ¶ 9.)

Hunter thereafter contracted with Defendant CDI International, Inc., a Pennsylvania corporation, to manufacture pet jerseys for Hunter for sale to third party retailers.  MRC alleges that CDI currently manufacturers pet jerseys for Hunter.

3

Cohen asserts:  "the pet jerseys manufactured for CDI on behalf of Hunter and offered by Hunter for sale by third party retailers are substantially the same as the patented design shown in the '488 Patent of MRC and the pet jersey manufactured for FiG."  (Cohen Aff., ¶ 11.)

MRC's complaint alleges a patent infringement claim against Hunter and CDI, alleging that Hunter's pet jerseys infringe the '488 Patent.  (Am. Complt.)  MRC moves the Court for a preliminary injunction pursuant to 35 U.S.C. § 283 "to immediately halt the willful infringement of MRC's patented design by [Hunter] and [CDI]."  (Mot. at 1.)

**Standard of Review**

Title 35 Section 283 of the United States Code provides that courts having jurisdiction in patent cases "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.  "When a patentee sues an alleged infringer for patent infringement and, for the purpose of immediately preventing further alleged infringement, moves under 35 U.S.C. § 283 for the extraordinary relief of a preliminary injunction, the patentee's entitlement to such an injunction is a matter largely within the discretion of the trial court."  *Titan Tire Corp. v. Case New Holland, Inc*., 566 F.3d 1372, 1375 (Fed. Cir. 2009).  In determining whether to exercise its discretion to grant a preliminary injunction, the court considers whether the moving party has shown four factors:  (1) a reasonable likelihood of success on the merits; (2) that the plaintiff will likely suffer irreparable harm if the alleged conduct continues; (3) that the balance of hardships weighs in favor of an injunction; and (4) that an injunction is in the public interest.  *Avery Denison Corp. v. Alien Technology Corp*., 626 F. Supp.2d 693, 697

(N.D. Ohio 2009).  Generally, "[t]hese factors, taken individually, are not dispositve; rather the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343, 1350 (Fed. Cir. 2001).  Irreparable harm is presumed when a clear showing of patent validity and infringement has been made.  However, "case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e*., likelihood of success on the merits and irreparable harm."  *Id*.  (emphasis in original).

**Discussion**

MRC contends that each of the four requirements for a preliminary injunction is met such that the Court should enter an order restraining and enjoining defendants from further sales or use of defendants' infringing pet jerseys during the pendency of this action.

First, MRC contends it is likely to succeed on the merits of its patent infringement claim because "the pet jerseys manufactured for CDI on behalf of Hunter and offered by Hunter for sale by third party retailers are substantially the same as the patented design shown in the '488 Patent of MRC and the pet jersey manufactured for FiG."  (Mem. at 4.)  MRC contends there is literal infringement of the '488 Patent under the "ordinary observer" test which applies in design patent cases.  Under the ordinary observer test, an accused device infringes upon a design patent if, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives," the design of the accused device and the patented design are "substantially the same."  (Mem. at 7, citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008).)  MRC contends infringement of the '488 Patent by defendants' pet

jerseys can be "easily seen" from a comparison of defendants' pet jerseys with figures from

the '488 Patent.  (*See* Mem. at 8.)  MRC compares a photograph of a pet jersey sold by

Hunter with figures of MRC's patented design and argues that the comparison shows:

> The designs of the pet jerseys are virtually identical, and the infringing pet
> jerseys incorporate ornamental features shown in the figures of the '488 Patent
> (i.e., the pattern of stitching on the front and back of the pet jersey, the
> interlock of the differing fabrics, the band around a lower portion and each of
> the sleeves of the pet jersey, and the V-neck provided on the upper portion of
> the pet jersey), thus appropriating the novel features of the patented design. . . .

(*Id*.)

Second, MRC contends it will suffer irreparable harm, which monetary damages are

insufficient to remedy, from defendants' infringing conduct because MRC "will lose market

share if injunctive relief is not granted."  (*Id*. at 9.)  MRC argues:

> Hunter is the primary supplier of NFL and NCAA licensed pet apparel to third
> party retailers, such as Petco.  By continuing to provide infringing pet jerseys
> to these third party retailers, the market will be saturated by the infringing
> products thereby precluding MRC, which also has manufactured and sells
> patented pet jerseys, from fairly competing in the marketplace.  In other words,
> even if MRC was able to have manufactured and sell to another licensed
> distributer, because Hunter will have saturated the third party retailers with an
> identical infringing design of the pet jersey, there would be no reason for these
> third party retailers, e.g., Petco, to purchase MRC's pet jerseys which would
> only add to that third party retailer's inventory of a particular design.
> Therefore, monetary damages would be insufficient to compensate MRC for
> the injury caused by Defendants' infringement.

(*Id.*)

Finally, MRC contends the balance of harms and public interest factors also favor

granting a preliminary injunction.  (*Id.* at 10-11.)

Hunter opposes the motion for a preliminary injunction, disputing that the factors to

be considered weigh in favor of a preliminary injunction.[1]  In particular, although Hunter does not dispute at this stage that defendants procure the manufacture of and sell pet jerseys that literally infringe the '488 Patent, Hunter contends MRC cannot establish a likelihood of success on the merits because the '488 Patent is invalid for obviousness as Hunter and Gould were selling pet jerseys having the same design characteristics as the '488 Patent for several years prior to the filing date of the '488 Patent.  (Opp. at 1.)  Given invalidity, Hunter contends that the balance of hardships and public interest factors do not weigh in favor an injunction.  Hunter also disputes that MRC has demonstrated irreparable harm.[2]

Design patents are governed by 35 U.S.C. § 171, which provides:  "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefore, subject to the conditions and requirements of this title."  Thus, "[d]esign patents are subject to the nonobviousness requirement of 35 U.S.C. § 103." *Titan Tire*, 566 F.3d at 1380. Section 103(a) of Title 35 provides:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.

In addition, Section 102(b) of Title 35 provides that a person is not entitled to a patent

---

[1]

CDI filed a notice on May 30, 2012, stating that it joins Hunter's opposition. (Doc. 29.)

[2]

While Hunter concedes that a loss of market share can in limited circumstances constitute irreparable harm, Hunter argues MRC's assertions that "it will lose market share" and "future customers and sales" are "speculative" and "unsupported by the factual record"; thus, MRC has failed to establish that money damages are insufficient. (Opp. at 12.)

where "(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).

As both parties acknowledge, the "ordinary observer test" used to determine infringement of a design patent is also used to determine whether the patent is invalid for obviousness.  *See International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed. Cir. 2009).  The Federal Circuit stated in *Walgreens*:  "[T]he ordinary observer test, whether applied for infringement or invalidity, and the obviousness test, applied for invalidity under section 103, focus on the *overall* designs."  *Id*. at 1240-41 (emphasis in original.)

Hunter argues that the pet jerseys defendants had manufactured and were selling at least as early as 2007 and prior to September 8, 2009 (as depicted in Hunter's Exhibits 2 and 4-6) qualify as single references having basically the same design characteristics as claimed in the '488 Patent; thus, the patent is invalid under 35 U.S.C. § 103.  Hunter argues that its pet jerseys have basically the same design characteristics as claimed in the '488 Patent because:

> As noted in Neth's Affidavit, the pet jersey in Exhibit 2 includes: (1) a V-shaped opening having a collar portion for the neck of the pet; (2) two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of the jersey; (3) cross-stitching between the sleeves; (4) two side portions extending from the sleeves to the bottom of the jersey; (5) the neck, sleeve and side portions of the jersey are made from a non-mesh material; (6) and the body of the jersey is made from a mesh material.  *See* Neth Affidavit, ¶ 11.  Similarly, the claimed pet jersey has all these identical elements, including the V-shaped collar, 2 sleeves/openings stitched to the body of the jersey, two side portions extending to the bottom of the jersey and utilizing two different materials, i.e., a mesh material for the body and a non-mesh material for the neck, sleeves and side portions.  In view of the Hunter jersey illustrated in Exhibit 2, the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved.  Namely, the Hunter

8

jersey creates the same overall visual appearance as the claimed design.

Turning to Hunter's jersey in Exhibits 4-6, it has the following features that are basically the same as the claimed design: (1) an opening having a collar portion for the neck of the pet; (2) two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of the jersey, the stitching extends to the neck portion of the jersey; (3) cross-stitching between the sleeves; (4) the neck and sleeve portions of the jersey are made from a non-mesh material; and (5) the body of the jersey is made from a mesh material. *See* Neth Affidavit, ¶ 17.  Again, the claimed jersey in the '488 Patent also includes these same elements, including an opening with a collar, 2 sleeves/openings stitched to the body of the jersey, a mesh material for the body and a non-mesh material for the neck and sleeve portions.  Due to the substantial similarities between Hunter's jersey in Exhibits 4-6 and the jersey claimed in the '488 Patent, the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved.

(Opp. at 9.)

Defendants argue that, given that "[t]here is a substantial question of invalidity of the '488 Patent under 35 U.S.C. § 103 as being obvious over Hunter's prior art," MRC "cannot meet its burden of showing a likelihood of success on the merits." (Opp at 9-10.)  Defendants also argue that a likelihood of success on the merits is lacking because, "beside the specter of invalidity, unenforceability also clouds the '488 patent" as Cohen did not disclose Hunter's prior art pet jerseys to the USPTO in his patent application.  Specifically, Hunter argues that Cohen's failure to disclose Hunter's prior art constitutes inequitable conduct that renders the '488 Patent unenforceable.  Inequitable conduct is a defense to patent infringement that, if proved, bars enforcement of a patent.  *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011).  To prevail on a claim of inequitable conduct, the accused infringer must prove by clear and convincing evidence that the applicant knew of a prior reference, knew that it was material, and made a deliberate decision to withhold it from the USPTO.  *Id.* at 1290.  Defendants argue that Cohen deliberately withheld Hunter's prior art

pet jerseys from the USPTO because Cohen knew, from his prior employment at Gould, that pet jerseys depicted in Exhibit 2 were being manufactured and sold by Gould to Hunter prior to Cohen's patent application; yet, Cohen failed to disclose this material information in his application.

In order to demonstrate a likelihood of success on the merits, a patentee seeking a preliminary injunction must show, in light of the burdens and presumptions that will inhere at trial, that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent. *Titan Tire*, 566 F.3d at 1376. "When the question of validity arises at the preliminary injunction stage, the application of [the] burdens and presumptions is tailored to fit the preliminary injunction context." *Id.* at 377. Thus, where an alleged infringer responds to a preliminary injunction motion by launching an attack on the validity of the patent, the challenger has the burden "to come forward with evidence of invalidity." *Id.* The challenger "need not prove actual invalidity" to demonstrate the patentee's lack of a likelihood of success on the merits but, instead, must "put forth a substantial question of invalidity to show that the claims at issue are vulnerable." *ERICO Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008). Once the challenger makes such a showing, the patentee, "to avoid a conclusion that it is unable to show a likelihood of success, then has the burden of responding with contrary evidence." *Titan Tire*, 566 F.3d at 1377. "[I]t is the patentee, the movant, who must persuade the court [at the preliminary injunction stage] that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue." *Id*.

Here, Hunter has persuasively demonstrated a substantial question of invalidity of the

'488 Patent under 35 U.S.C. § 103.  Hunter has demonstrated that it arranged for the manufacture and sold, at least as early as 2007, prior art pet jerseys that create the same overall visual appearance as the design claimed in the '488 Patent.  (*See, e.g.*, Figures 1-4 of the Patent and Exhibits 2, 4-6 of Neth's Affidavit.)  Specifically, the overall design of the pet jersey claimed in the '488 Patent appears substantially the same as the overall design of the pet jerseys depicted in Exhibits 2 and 4-6 of Neth's Affidavit, which Neth states were manufactured and sold by Hunter more than one year prior to Cohen's patent application.  Thus, the likely result in this litigation is that the '488 Patent is invalid under 35 U.S.C. § 103.

In light of Hunter's substantial showing of invalidity for obviousness, MRC bears the burden of persuading the Court that it is likely to succeed on its patent infringement claim at trial despite the substantial question of invalidity raised.  *See Titan Tire*, 566 F.3d at 1377.  MRC has not made a persuasive showing in this regard.

First, MRC argues that Hunter "acquiesced in the validity of the patent" because Hunter "continued to sell pet jerseys marked with the '488 Patent after its relationship with FiG ceased."  (Rep. at 4.)  MRC cites no authority to support its position that there was acquiescence sufficient to demonstrate that its patent is valid and enforceable here.  Although Hunter noted in its opposition brief that one way a plaintiff can establish the validity of a patent is by demonstrating "a long period of industry acquiescence in the patent's validity," (*see* Opp. at 5, *citing Bettcher Ind., Inc. v. Bunzel USA*, 692 F.Supp.2d 805, 819 (N.D. Ohio 2010)), the fact that Hunter continued to sell remaining pet jersey inventory marked with the '488 Patent after its relationship with FiG ended in 2010 is not persuasive to demonstrate "a long period of industry acquiescence" in the validity of the '488 Patent.

11

MRC also disputes that Hunter's prior art pet jerseys depicted in Exhibits 2 and 4-6

"qualify as a single reference having basically the same design characteristic of the '488

Patent" such that the claimed design would have been obvious to a designer of pet apparel of

ordinary skill.  (Rep. at 4.)  MRC purports to support this argument by asserting that features

of its patented pet jerseys differ in some respects from Hunter's prior art jerseys.  MRC

argues:

> Hunter states that the "side portions of the jersey are made from a non-mesh
> material" (*see page 8 of Hunter's Memorandum in Opposition*).  However,
> Exhibit 2 fails to disclose that the material for the side portions is different
> than the material for the body of the pet jersey. . . . In contrast, the claimed pet
> jersey includes two side portions extending to the bottom of the jersey, the side
> portions being a non-mesh material, with a decorative stitching provided on
> the back portion of the jersey body for interlocking the non-mesh side portions
> with the mesh body.  In fact, the pet jersey of Exhibit 2 fails to show any
> decorative stitching, specifically the decorative stitching of the claimed pet
> jersey.  Further, the sleeve design (i.e., the position of the sleeves relative to
> the collar) of the pet jersey shown in Exhibit 2 differs from the sleeve design
> of the claimed pet jersey. . . .
>
> Turning to the pet jersey depicted in Exhibits 4-6, Hunter admits that "the
> body of the jersey is made from a mesh material (*see page 8 of Hunter's
> Memorandum in Opposition*).  Upon further inspection, this pet jersey also
> includes two side portions extending to the bottom of the jersey.  Similar to the
> pet jersey of Exhibit 2, the side portions are of the same material as the body,
> i.e., a mesh material, and there is no decorative stitching interlocking the side
> portions to the back portion of the jersey body.  Further, the pet jerseys of
> Exhibits 4-6 includes a rounded collar, not a V-shaped collar.

(*Id*. at 4-5)

However, despite MRC's attempts to distinguish the pet jersey design claimed in the

'488 Patent from the pet jerseys Hunter manufactured and sold prior to 2009, Neth's affidavit

establishes that Hunter's pet jerseys are similar to the patented jersey design in regard to the

features of their collars, sleeves, stitching, and use of differing materials.  MRC has not

contradicted Neth's affidavit with a contrary affidavit.

Furthermore, a side by side comparison of the overall design claimed in the '488 patent and the overall design of the prior art jerseys depicted in Exhibits 2 and 4-6 demonstrates that the jerseys are substantially similar in "overall" visual appearance.  (*See* Opp. at 8; Rep. at 3.)

Accordingly, the materials before the Court on this motion for a preliminary injunction indicate that the prior art jerseys in Exhibits 2 and 4-6 have a substantially similar overall  appearance and design as the patented jersey such that the patented design appears to be obvious under 35 U.S.C. § 103.  MRC has not persuasively distinguished the "overall design" of its patented design from the prior art pet jerseys.  Accordingly, MRC has not met its burden at this preliminary injunction stage of persuading the Court that is has a likelihood of success on the merits.  Rather, at this preliminary injunction stage, a likelihood of success on the merits of MRC's patent infringement claim is lacking because the patented design appears obvious in light of prior art under 35 U.S.C. §103.

Given the absence of a likelihood of success on the merits, a preliminary injunction is not warranted.  As the federal circuit held in *Amazon.com, Inc.*, 239 F.3d at 1350, a movant cannot be granted a preliminary injunction in a patent infringement case unless it establishes *both* a likelihood of success on the merits and irreparable harm.  Even assuming irreparable harm, a preliminary injunction is inappropriate because a likelihood of success on the merits does not exist.

Furthermore, the substantial question of invalidity demonstrated by Hunter also demonstrates that the balance of hardships and public interest factors weigh against an

13

injunction.  There is no public interest in enforcing an invalid patent.  In addition, MRC does

not suffer any legal hardship from and has no right to enjoin defendants from commercial

activity infringing an invalid patent.  Thus, the balance of hardships factor also weighs against

an injunction.

### Conclusion

For all of the reasons discussed above, MRC's Motion for Preliminary Injunction is

denied.  The factors to be considering in determining whether to grant an injunction under 35

U.S.C. § 283 weigh against the equitable relief.

IT IS SO ORDERED.


        /s/Patricia A. Gaughan
        PATRICIA A. GAUGHAN
Date: 6/07/12        United States District Judge