# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MRC Innovations, Inc., | ) | CASE NO. 1: 12 CV 684 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Hunter MFG., LLP, and | ) | <u>Memorandum of Opinion and Order</u> |
| CDI International, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This is a patent infringement action pertaining to two design patents relating to sports jerseys for pets.  Defendants Hunter MFG, LLP (Hunter) and CDI International, Inc. (CDI) have filed a joint motion for summary judgment.  (Doc. 42.)  Also pending before the Court is a motion by the plaintiff for oral argument.  (Doc. 51.)  For the reasons stated below, defendants' motion for summary judgment is granted, and plaintiff's motion for oral argument is denied.

**Facts**

Plaintiff MRC Innovations, Inc. (MRC) is the owner by written assignment of all right, title, and interest to two design patents:  U.S. Design Patent No. D634, 488 (the '488 patent), entitled "Football Jersey for a Dog," and U.S. Design Patent No. D634,487 (the '487 patent), entitled "Baseball Jersey for a Dog."  (Second Am. Complt., Exs. A and B.)  The '488 patent claims an ornamental design for a football jersey for a dog "as shown and described" in the patent.  The '487 patent claims an ornamental design for a baseball jersey for a dog as "shown and described."  The description in the '488 patent includes four figures depicting various views

1

(side, front, and back) of the claimed pet football jersey and states that "[t]he material of the football jersey is primarily of a mesh and interlock fabric."  The description in the '487 patent likewise includes four figures depicting various views of the claimed pet baseball jersey and states that "[t]he material of the baseball jersey is primarily of mesh fabric."  Both patents issued on March 15, 2011 upon applications filed with the United States Patent and Trademark Office (USPTO) on September 8, 2010 by Mark Cohen.  Cohen is the named inventor of the patents and is the principal shareholder of MRC.  Cohen assigned both patents to MRC.

For over twenty years, Hunter has been a retailer of licensed sports consumer products. (Doc. 9, Neth Dec.)  Hunter has sold pet jerseys since at least as early as 2006.  (Neth Dec., ¶3.) Prior to the issuance of the design patents in suit, and in particular prior to September 9, 2009,[1] Cohen – through companies with which he was/is affiliated – supplied Hunter with pet jerseys for dogs that Hunter sold.

For example, Hunter sold a so-called "V2" pet jersey, depicted on page 2 of defendants' memorandum, prior to September 9, 2009.  (Neth Dec., ¶1.)  Hunter purchased the V2 pet jersey, which was manufactured in and imported from China, from Stephen Gould Corporation.  Mark Cohen was a salesperson for Stephen Gould Corporation at least as early as 2008.  (Neth Dec., ¶¶2, 3.)  Hunter sold V2 jerseys purchased from Stephen Gould to customers within the United States prior to September 9, 2009.  (*Id.* at ¶4.)

---

[1]   As discussed below, Section 102(b) of the Patent Act provides that a person is not entitled to a patent where "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. §102(b). Therefore, September 9, 2009, one year prior to the date the application for the '488 Patent was filed, is a critical date in determining the validity of the patent.

2

Beginning on or about September 2008, Cohen supplied V2 pet jerseys to Hunter through Fun-in-Games, Inc. (FiG), another company with which Cohen had a relationship.[2]  Cohen states that FiG normally supplied pet jerseys to Hunter in specified colors, and Hunter then applied "transfers" to the pet jerseys for particular markets.  For example, red pet jerseys supplied by FiG would be decorated with Ohio State logos or St. Louis Cardinals logos.  Orange pet jerseys might be decorated with Cleveland Browns or Cincinnati Bengals logos.  In some instances, FiG applied the transfers itself and shipped the finished product to Hunter.

In addition, between the years of 2007 and 2009, Cohen also designed and supplied to Hunter, through FiG, a pet football jersey developed by Hunter for a special NFL program. (Cohen Dep. at  47-48.)  A sample of this jersey is depicted on page 3 of defendants' memorandum.  It is a green pet jersey bearing a Philadelphia Eagles logo.  Cohen arranged for this "Eagles" pet football jersey to be manufactured in China for Hunter sometime prior to July 30, 2009.  (*Id*. at 50.)  Hunter sold the "Eagles" pet jersey through third-party retailers (Wal-Mart and PetSmart) prior to July 30, 2009.

Cohen asserts that in 2009, he designed another pet jersey, a so-called "V3" jersey, which FiG subsequently also supplied to Hunter.  (Cohen Dec., ¶12.)  The "V3" pet jersey is depicted on page 5 of Cohen's Declaration bearing a Kentucky Wildcats logo.  (Cohen Dec., p. 5.) Hunter began purchasing the V3 jersey from FiG sometime after September 8, 2009.

In December 2010, "issues" arose between Hunter and Cohen, including that Hunter was experiencing financial difficulties making Hunter "slow" at times to pay FiG.  For this reason,

---

[2]     FiG is a "sister" corporation to MRC and is also owned by Cohen.  FiG is licensed by MRC to manufacture and sell pet jerseys to third parties.

Cohen informed Hunter that he did not want to do business with Hunter any longer.  Cohen

asserts, however, that FiG continued to supply Hunter with pet jerseys "for several months

thereafter." (Cohen Dec., ¶19.)  Hunter meanwhile sought proposals from other companies

requesting that they manufacture and supply it with pet jerseys like the V3 jersey.  Ultimately,

Hunter contracted with another supplier, CDI, to manufacture and supply Hunter with pet

jerseys.        After the '487 and '488 patents issued on March 15, 2011, Cohen "assigned" both

patents to MRC, which granted a license to FiG to produce the patented football and baseball pet

jerseys.  (*Id.*, ¶22.)  Cohen asserts that after the patents were issued, Hunter continued to buy

some V3 pet football jerseys from FiG, including those that bore labels marking them as

patented.  Hunter did not purchase any baseball jerseys from FiG after the '487 patent issued

although Hunter had purchased pet baseball jerseys from FiG prior to the issuance of the patents.

(*Id*. at ¶¶18, 22, 23.)  By December 2011, FiG "had stopped shipping V3 Jerseys to Hunter"

completely.

Plaintiff filed this lawsuit against Hunter and CDI on March 20, 2011, alleging

infringement of the '487 and '488 patents.  (Second Am. Complt., Doc. 37.)  Plaintiff's Second

Amended Complaint alleges that defendants have infringed the '488 and '487 patents by

importing into the United States, offering to sell and selling, either directly or through third party

retailers such as Petco, pet apparel (in particular, football and baseball jerseys for dogs) that are

substantially the same as the designs covered by the '487 and '488 patents.  As evidence of such

infringement, plaintiff attaches to its complaint pages from Hunter's website and the website of

third-party retailer Petco (through which Hunter also sells pet jerseys).  These pages depict pet

football and baseball jerseys for dogs currently being offered for sale by Hunter and supplied by

4

CDI.  (Sec. Am. Complt., Exs. C-H).  Plaintiff contends these pet football and baseball jerseys have designs that are substantially the same as the designs covered in the '488 and '487 patents and infringe the patents.

Defendants move for summary judgment on the basis that both patents are invalid.

**Standard of Review**

Summary judgment is as appropriate in a patent case as in any other case.  *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed.Cir. 1984).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir.2003).  The court does not weigh the evidence to determine the truth, but rather, determines whether the evidence produced creates a genuine issue for trial.  *Id.*

A patent is presumed valid under 35 U.S.C. § 282.  "Consequently, 'a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise.' "  *Chrimar Sys., Inc. v. Cisco Sys., Inc.*, 318 F.Supp.2d 476, 491 (E.D.Mich. 2004) (quoting *Eli Lilly & Co. v. Barr Labs.*, 251 F.3d 955, 962 (Fed.Cir. 2001)); *see also Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed.Cir.2002) (holding that a party seeking to establish particular claims as invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence).  However, the challenger's burden to show invalidity may be "more easily met" when

5

the challenger produces prior art that is more pertinent than that considered by the Patent and

Trademark Office during prosecution of the patent.  *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418,

1423 (Fed. Cir. 1988); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1549 (Fed. Cir.1983).

**Discussion**

"A design patent protects the nonfunctional aspects of an ornamental design as seen as a

whole and as shown in the patent."  *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d

1365, 1371 (Fed. Cir. 2006).  Under 35 U.S.C. §171, "[w]hoever invents any new, original and

ornamental design for an article of manufacture may obtain a patent therefor, subject to the

conditions and requirements of this title."  35 U.S.C. §171.  To be patentable, a design must be

new, original, ornamental, and nonobvious.  *Snhnadig Corp. v. Gaines Mfg.*, 494 F.2d 383, 387

(6th Cir. 1974).  As noted by the Federal Circuit in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543

F.3d 665, 670 (Fed. Cir. 2008), in *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871), the Supreme

Court established that the "ordinary observer" test applies to determine whether a design patent

is infringed.  Under this test:  "if, in the eye of an ordinary observer, giving such attention as a

purchaser usually gives, two designs are substantially the same, if the resemblance is such as to

deceive such an observer, inducing him to purchase one supposing it to be the other, the first one

patented is infringed by the other." *Gorham*, 81 U.S. at 528.

In addition, like a utility patent, a design patent may be held invalid if it is deemed

"obvious" under Section 103(a) of the Patent Act.[3]  Under Section 103(a), a patent is invalid:

---

[3]

     *See In re Haruna*, 249 F.3d 1327, 1335 (Fed. Cir. 2001)(Section 103 applies to
design patents in much the same manner as it applies to utility patents); *In re Borden*, 90
F.3d 1570, 1574 (Fed. Cir. 1996) ("Design patents are subject to the same conditions on
patentability as utility patents, including the nonobviousness requirement of 35 U.S.C.
§103).

6

> if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. §103(a).  Section 102(b) of the Patent Act characterizes what is considered as "prior art."  Section 102(b):  "A person shall be entitled to a patent unless- . . . .(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. §102(b).  Thus, the "critical date" for purposes of the applicability of Section 102(b) is the "date exactly one year prior to the date of application for the patent. . . ." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1327 (Fed. Cir. 2001).

In addressing a claim of obviousness, the ultimate inquiry is whether a claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved.  *Apple, Inc. v. Samsung Electronics Co. Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012).  Further, the Federal Circuit has explained that:

> [t]o determine whether "one of ordinary skill would have combined teachings of the prior art to create the same overall appearance of the same design," the finder of fact must employ a two-step process.  First, "one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'"  Second, "other references may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design. . . .[T]he "secondary references may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to another.'"

*Id.* (citations omitted).  Once a piece of prior art has been constructed, the determination of invalidity for "obviousness," like the determination of infringement, "requires application of the ordinary observer test."  A patented design is obvious if the patented design as whole is

substantially the same, or has the same "overall" visual appearance, as the prior art.  *See Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009).  Obviousness is a legal conclusion based on four general types of underlying facts which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicia of nonobviousness.  *Graham v. John Deere Co.*, 383 U.S. 1 (1966) (the "*Graham*" factors).

*The '488 Patent*

Defendants contend the '488 patent is invalid for obviousness as a matter of law because the undisputed evidence shows that three different pet football jerseys, each qualifying as prior art under 35 U.S.C. §102(b) and not considered by the USPTO during prosecution of the '488 patent, have "basically the same" design characteristics as those claimed in the patent.  (Def. Mem. at 12-15.)  Specifically, defendants point to the V2 and "Eagles" pet football jerseys discussed above that Stephen Gould Corporation and FiG supplied to Hunter prior to September 9, 2009 (depicted on page 3 of defendants' memorandum), as well as to a pet jersey described in a printed publication and offered for sale in the United States at least as early as 2007 by Sporty K9, Ltd., an Arizona corporation (the "Sporty K9" jersey).  (Def. Mem., Ex. C.)  Defendants assert that each of these prior art pet jerseys qualifies as a single reference having design characteristics that are "basically the same" as the design claimed in the '488 patent, thus rendering the patent invalid for obviousness.  Defendants assert the claimed design and the prior art jerseys have the same design characteristics for the following reasons.

The V2 pet football jersey developed by Hunter includes:  (1) a V-shaped opening having

8

a collar portion for the neck of the dog; (2) two openings/sleeves with cuffs stitched to the body of the jersey for the front two limbs of the dog; (3) cross stitching between the sleeves; (4) two side portions extending from the sleeves to the bottom of the jersey; (5) the neck, sleeve, and side portions of the jersey are made from a non-mesh material; and (6) the body of the jersey is made from a mesh material.  This is similar to the elements of the claimed pet football jersey which  also includes:  a "V-shaped collar, two sleeves/openings stitched to the body of the jersey, two side portions extending to the bottom of the jersey and utilizing two different materials, i.e., a mesh material for the body and a non-mesh material for the neck, sleeves and side portions." (Def. Mem. at 12.)

The "Eagles" pet football jersey features: (1) an opening having a collar portion for the neck of the pet; (2) two openings/sleeves with cuffs for two limbs of the pet which are stitched to the body of the jersey, the stitching extends to the neck portion of the jersey; (3) cross- stitching between the sleeves; (4) the neck and sleeve portions of the jersey are made from a non-mesh material; and (5) the body of the jersey is made from a mesh material.  This is also similar to the design elements of the claimed jersey, "including an opening with a collar, two sleeves/openings stitched to the body of the jersey, a mesh material for the body and a non-mesh material for the neck and sleeve portions."  (*Id*. at 12-13.)

Finally, the "Sporty K9" pet jerseys include: (1) a V-shaped opening having a collar portion for the head of the pet; (2) two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of the jersey; (3) seams between the sleeves and the body; (4) two side portions extending from the sleeves to the bottom of the jersey; (5) the neck, sleeve, and side portions of the jersey are made from a non-mesh, polyester material; and (6) the body of the

9

jersey is made from a mesh material.  (Def. Mem. at 13.)  The claimed jersey features these same elements, "including the V-shaped collar, two sleeves/openings stitched to the body of the jersey, two side portions extending to the bottom of the jersey and utilizing two different materials, i.e., a mesh material for the body and a non-mesh material for the neck, sleeves and side portions." (*Id*. at 13.)

Defendants assert that "the only modest difference" between the V2 and Sporty K9 jerseys and the jersey claimed in the '488 patent is that "surge stitching" appears along the sleeves of the claimed jersey, including a horizontal surge stitch between the two sleeves on the front of the jersey and vertical surge stitching on the back of the jersey extending from the sleeves to the bottom of the jersey.  (Def. Mem. at 14.)  However, defendants assert that the Eagles pet jersey includes nearly identical "surge stitching" on the front and back.  Defendants argue that the V2 jersey and Eagles jersey, as primary and modifying prior art references, demonstrate the invalidity of the '488 design.  In this regard, defendants argue:

> [T]aking the V2 jersey as the primary reference for the sake of argument, the Eagles jersey is clearly "so related" as to suggest the application of surge stitching to any material seams forming the body, as is done in the design of the '488 Patent.  Taking the Eagles jersey as the primary reference instead, the V2 jersey is also so related to suggest the addition of a V-neck and non-mesh side panels.  In any case, the end result is the same: the design of the '488 Patent is invalid as obvious.

(*Id*. at 15.)  Furthermore, defendants cite law supporting the proposition that "minor" or "trivial" differences between a patented design and a prior art reference that are "insignificant from the point of view of an ordinary observer" do not preclude a finding of invalidity on summary judgment.  *See id.*, *citing Int'l Seaway*, 589 F.3d at 1243 ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or

10

trivial differences that necessarily exist between any two designs that are not exact copies of one another.").  Defendants contend that any differences that exist between the prior art pet football jerseys and the jersey claimed in the patent are, at best, minor or trivial and do not prelude a finding of invalidity.

In sum, defendants contend:  "the pet football jersey of the '488 Patent merely combines well known features of prior art jerseys in a way which would have been obvious to any designer of ordinary skill in the field of pet jerseys"; thus, the patent is invalid for obviousness under 35 U.S.C. §103.  (Def. Mem. at 16.)

Plaintiff disputes that defendants have demonstrated facts necessary to find invalidity under the *Graham* factors.

Plaintiff disputes defendants' position that any of the prior art references cited by defendants constitute a primary reference having an overall appearance, or design characteristics, that are "basically the same" as the claimed design, and plaintiff disputes defendants' position that only trivial or insignificant differences exist between the claimed design and the prior art.[4] According to plaintiff, the prior art jerseys differ from the claimed design because the V2 pet football jersey:  (1) does not have an "interlock" fabric panel that is present in the claimed design; (2) lacks "ornamental surge stitching" on the front and rear portions that is present on the claimed design; and (3) has "drop" sleeves whereas the claimed jersey has "raglan-style" sleeves.

The Eagles pet football jersey: (1) does not use "interlock fabric" as present in the

_____

[4]

Plaintiff does not dispute the existence of any of the asserted prior art pet jerseys or that they qualify as "prior art" under the Patent Act.  Plaintiff also does not dispute that the jerseys were not disclosed to the USPTO during prosecution of the '488 and '487 patents.

claimed design; (2) does not have a V-neck collar as present in the claimed design; and (3) does not have ornamental surge stitching on the *rear* portion of the jersey as present in the claimed design.

The Sporty K9 jersey: (1) has a panel that appears to be of a "dazzle" (*i.e.*, shiny) fabric; whereas, the claimed design has an "interlock fabric panel"; (2) does not have ornamental surge stitching on the front and rear of jersey as present in the claimed design; and (3) has "drop" rather than "raglan-style" sleeves.  (Pltf. Opp. at 15-21.)

Plaintiff's position is that the cited prior art references of record do not create the same overall visual appearance as the claimed design of the '488 patent for two reasons:  (1) "[t]he portion of the ornamental serge stitching on the back of the football jersey for a dog as shown and described in the '488 Patent is simply not present in any reference of record," and (2) "the only prior art references of record that show narrow side panels disposed between front and back mesh panels are made of dazzle fabric rather than interlock fabric."  (Pltf. Opp. at 23.)[5]

---

[5]

In his declaration, Cohen stated the following as to the differences between the V2 and Eagles jerseys and the V3 pet jersey on which the '488 Patent was allegedly based:

> The material of the V3 Jersey is primarily of a mesh and interlock fabric. No dazzle fabric, which was used extensively in the V2 Jersey, was used in the V3 Jersey at all.  The design of the V3 Jersey includes raglan-style sleeves beneath which narrow panels of interlock fabric separating front and rear mesh panels extend to the bottom of the jersey.  In contrast, the design of the V2 Jersey included drop sleeves beneath which narrow panels of dazzle fabric separating front and rear mesh panels extended to the bottom of the V2 Jersey.  And, the design of the Eagles Jersey included raglan-style sleeves, but no narrow panels of interlock fabric between mesh front panels and rear panels.

In addition, according to Cohen,

> The design of the V3 Jersey also includes ornamental serge stitching

Plaintiff also argues that defendants have failed to provide the Court with sufficient evidence as to the required *Graham* factors to support summary judgment.  Specifically, plaintiff argues that defendants have not presented the Court with any evidence as to the third Graham factor (the level of ordinary skill in the art) because defendants do not produce evidence from a designer.  In contrast, plaintiff asserts that it has evidence from a designer, namely Cohen himself, who states that the '488 patent would not have been obvious to a designer in view of the prior art jerseys.  (Pltf. Opp. at 23, citing Cohen Dec., ¶¶30-34.)

Further, plaintiff contends there is objective evidence of nonobviousness (the fourth *Graham* factor) that defendants do not raise, specifically, evidence that the patented design has had commercial success, was copied, and has been accepted by others (factors that have all  been recognized as indicia of nonobviousness).  But to support its position of "nonobviousness," plaintiff relies primarily on Cohen's own statements that sales of the V3 jersey have been more successful commercially than sales of the V2 jersey, that Hunter and CDI copied the V3 jersey, and that MRC has granted a license under the patent to an entity not wholly owned by MRC or its principals.  (Pltf. Opp. at 22, citing Cohen Declaration.)  Plaintiff contends nonobviousness is also suggested because, on October 17, 2011, it filed an application for a design patent for a hockey jersey for a dog and identified the V2, the V3, and Eagles pet jerseys as known prior art.

---

extending from the neckline underneath both sleeves, horizontally across the chest and back, and vertically on the back only between the narrow interlock fabric panel and the rear mesh panel.  This differs from the V2 Jersey which did not include any ornamental serge stitching at all, and the Eagles Jersey which did not include the vertical serge stitching on the back only.  The ornamental serge stitching in the V3 Jersey is decorative and is provided over the stitching that binds together the respective mesh and interlock fabric panels that form the V3 Jersey.

(Cohen Dec., ¶¶13, 14.)

13

According to plaintiff, the Patent Examiner issued a Notice of Allowance of a patent on November 12, 2012.  Plaintiff contends this supports a conclusion that the design shown and described in the '488 patent would not have been obvious to one having ordinary skill in the art in view of the V2 and Eagles jerseys.  (Pltf. Opp. at 24.)

The Court, however, finds that defendants have met their burden on summary judgment of demonstrating invalidity of the '488 patent on the basis of obviousness in view of undisputed prior art under the *Graham* factors.  As noted, the first factor, the scope and content of the prior art, is not in dispute and consists of the V2, Eagles, and Sporty K9 football jerseys identified by defendants.

In addition, defendants' position is persuasive that the combined teachings of the prior art are such that the subject matter of the design claimed in the '488 patent as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.  For instance, defendants persuasively argue that the prior art Eagles jersey is sufficient to constitute "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'"  The Eagles jersey is clearly a pet football jersey having an opening at the collar portion for the head of the pet, two openings and sleeves stitched to the body of the jersey on either side for limbs of the dog, and a body portion on which a football logo is applied (extending from the top of the jersey to the bottom of the jersey and covering a portion of the body of the pet).  As Cohen himself states in his declaration, the Eagles jersey is made "primarily of a mesh and interlock fabric," exactly what is claimed in the description of the '488 patent.  (*See* Cohen Dec. at ¶10. '488 Patent, Description.)  In addition, the Eagles jersey exhibits ornamental surge stitching, which plaintiff emphasizes exists in the claimed design.  The

14

only differences identified by the plaintiff between the Eagles jersey and the pet football jersey of the '488 patent relate to the V-neck collar depicted in the patented design, additional ornamental surge stitching appearing on the claimed design (*i.e.*, unlike the Eagles jersey, the claimed design uses ornamental surge stitched down the *rear* portion of the jersey in addition to ornamental serge stitching at the top of the jersey and in between the sleeves), and to "an interlock fabric panel" that appears on the side portion of the claimed design.

Nonetheless, defendants' argument is persuasive that all of these asserted differences are either *de minimis* or are plainly suggested by related secondary prior art references.  Taking the Eagles jersey as the primary prior art reference, the V2 and Sporty K9 jerseys are clearly "so related to the primary reference" as to suggest the application of the features of a V-neck collar and the use of non-mesh or other fabric on the side panel portions.  Thus, one of ordinary skill in the art in the field of pet jersey design would have likely combined the teachings of the prior art to create the same overall appearance of the pet jersey in the claimed design.

Furthermore, the presence of additional ornamental surge stitching on the back of the pet jersey (as is shown on the claimed design), and the positioning of a strip of non-mesh, or "interlock" fabric on the side of the claimed design, are not "substantial" differences between the claimed design and the prior art so as to create a patently distinct design.  Rather, these differences between the claimed design and the prior art are at the most "*de minimis* changes which would be well within the skill of an ordinary designer in the art." *See In re Carter*, 673 F.3d 1378, 1380 (Fed. Cir. 1982).

Plaintiff has not demonstrated that a genuine dispute exists on the basis of the third *Graham* factor, the level of skill of a designer in the art, because defendants did not present

15

evidence of the opinion of an actual designer.  As the Federal Circuit has recognized, the trial judge assesses obviousness from the position of a "fictitious" person of ordinary skill in the art. *See in re Nalbandian*, 661 F.2d 1214, 1216 (CCPA 1981).  While expert testimony may be used to influence the court's decision, expert opinion on obviousness is not required.  *See Peterson Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1547-48 (Fed. Cir. 1984), *abrogation on other grounds recognized by*, *Beatrice Foods Co. v. New England Printing and Lithographing Co.*, 899 F.2d 1171 (Fed. Cir. 1990).  Furthermore, subjective evidence of obviousness from the point of view of the inventor is not persuasive evidence of nonobviousness.  *See, e.g., Ryko*, 950 F.2d at 718 (test is not subjective obviousness to the inventor, but is objective obviousness to the artisan); *Celanese Corp. v. BP Chem. Ltd.*, 846 F. Supp. 542, 547 (S.D. Tex. 1994) ("evidence of the patent's 'subjective obviousness' to the inventor . . . is direct evidence of nothing.").  Thus, Cohen's own opinion that the design claimed in the '488 patent would not have been obvious to a designer having ordinary skill in the art in view of the prior art at the time of the invention, and his own statements of commercial success, copying, and licensing of his claimed design, are unpersuasive to demonstrate a genuine dispute.

Finally, the Court does not consider the Notice of Allowance issued in connection with the currently pending application for a design patent for a hockey jersey for a dog to be indicative of a finding by the USPTO of nonobviousness of the prior '488 design, and it is not dispositive of the *Graham* factors in connection with the '488 design.

For the reasons stated above, defendants' position is persuasive that the '488 patent merely combines known features of undisputed – and clear and convincing – prior art jerseys in a way which would have been obvious to a designer of ordinary skill in the field of pet jerseys.

16

The Courts finds, on the basis of evidence of the *Graham* factors before it, that the '488 patent is directed to an obvious design in view of the prior art and is invalid as a matter of law under Section 103(a) of the Patent Act.

Defendants challenge the validity of the '488 patent on the alternative ground that it fails to meet the requirements of 35 U.S.C. §112.  The first paragraph of Section 112 requires that a patent "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 U.S.C. §112(a).  The second paragraph of Section 112 requires the patent to "particularly point[] out and distinctly claim[] the subject matter which the inventor . . . regards as the invention." 35 U.S.C. §112(b).  These requirements exist because "[i]f the limits of a patent are not adequately defined, a zone of uncertainty is created which would discourage invention."  *Semmler v. American Honda Co., Inc.*, 990 F. Supp. 967, 974 (S.D. Ohio 1997).

Defendants argue that the '488 patent does not meet these requirements because it "is silent regarding the location and appearance of any 'interlock fabric'" even though plaintiff contends interlock fabric is a key feature of the claimed design.  Defendants argue the patent does not reasonably apprise those skilled in the art of the nature of the claimed ornamental design.  (Def. Mem. at 21.)  Further, because the patent fails to describe the location of interlock fabric and its ornamental appearance, the patent "cannot enable one to make invention as claimed, since the location and ornamentation of the claimed interlock fabric is unknown" and impossible to ascertain from the specification.  (*Id.* at 22.)

The Court does not find summary judgment warranted on this alternative ground.

Plaintiff contends in its opposition brief that a designer having ordinary skill in the art would readily appreciate where mesh and interlock fabric is used.  In particular, the areas in the drawings of the patent that are shown with grid lines indicate that such areas would be constructed of mesh fabric, and the panels shown without grid lines would be constructed of interlock fabric.  Plaintiff points to statements by Cohen to this effect as well as testimony by Hunter's president that the area that looks like a grid in the patent would be constructed of mesh. The Court finds that the drawings in the patent are sufficient to indicate where mesh and interlock fabric are used in the claimed design such that one reading the patent could ascertain had to construct the claimed jersey.  At a minimum, there is at least a genuine issue of material fact as to whether the patent includes "information sufficient for one having ordinary skill in the art to construct a football jersey for a dog in accordance with the claimed design" such that summary judgment is not appropriate under 35 U.S.C. §112.  (Pltf. Opp. at 29.)

*The '487 Patent*

Defendants also contend that the '487 patent is invalid as a matter of law.  They assert that the design claimed in the '487 patent for a baseball jersey for a dog is obvious under 35 U.S.C.§103(a) as well as anticipated under 35 U.S.C. §102(b).  "[D]esign patent anticipation requires a showing that a single prior art reference is identical in all material respects to the claimed invention." *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed.Cir.2001). The "ordinary observer" test applies in determining anticipation. *See Int'l Seaway Trading Corp.*, 589 F.3d at 1237–40.

Defendants contend that the Sporty K9 baseball jersey qualifies as a "something in existence" the design characteristics of which are "basically the same" as the claimed design for

18

purposes of both anticipation and obviousness.  Defendants emphasize that the Sporty K9 baseball jersey has:  (1) a V-shaped opening having a collar portion for the neck of the pet; (2) two openings/sleeves with cuffs for two of the limbs of the pet which are stitched to the body of the jersey; (3) a banded opening at the bottom of the jersey for the hind portion of the pet; and (4) four buttons extending vertically down the center of the front of the jersey.  (*See* Def. Mem., Ex. C.)  Defendants argue that the claimed pet jersey has all of these identical elements, including the V-shaped collar, two sleeves/openings stitched to the body of the jersey, a banded opening at the bottom of the jersey for the hind end portion of the pet and four buttons extending vertically down the center of the front of the jersey.  (*See* '487 Patent, Figure 2.)  While defendants acknowledge that the Sporty K9 jersey does not appear to be made of the same exact "mesh" material as is shown in the '487 Patent, defendants assert that this is a "minor" or "trivial" difference such that the design claimed in the '487 patent is anticipated by the Sporty K9 jersey.  (Def. Mem. at 19.)

Alternatively, defendants contend the design is obvious 35 U.S.C. §103(a) in view of the prior art.  In this regard, they assert that the Sporty K9 jersey "qualifies as a single reference for which the design characteristics are 'basically the same as the claimed design" and the only different feature disclosed in the '487 design, the use of mesh material, was "well known long prior to the time the '487 Patent was filed."  (*Id.*)  Indeed, defendants point out that "all of the football jerseys cited . . . by Defendants (which also qualify as prior art for the '487 Patent . . . ) are made of mesh material."  Thus, defendants contend the use of mesh material was suggested by prior art references so as to render the '487 patent obvious.

Plaintiff contends there are significant differences between the Sporty K9 baseball jersey

and the design claimed in the '487 patent, asserting that the Sporty K9 jersey has a different "collar assembly" (incorporating a "faux t-shirt portion" that the claimed design does not have); the claimed design uses a "mesh" fabric that is different from the polyester fabric of which the Sporty K9 jersey is made; and that the Sporty K9 jersey is shorter and more "tubular" when donned by a dog than the claimed design.  (Pltf. Opp. at 27-28.)

The Court, however, agrees with defendants that the '487 patent, like the '488 patent, is invalid as obvious in view of the prior art under the *Graham* factors.  Even assuming the Sporty K9 pet jersey, as a single prior art reference, is not "identical" in all material respects to the design claimed in the '487 patent in order to find anticipation, defendants' argument is persuasive that the Sporty K9 jersey constitutes a single prior art reference, "a something in existence," having design characteristics that are "basically the same" as the claimed design, and the differences that exist between the Sporty K9 jersey are either minor, or are plainly disclosed in modifying secondary primary art references.  For largely the same reasons discussed above with respect to the '488 patent, the Court finds the '487 patent likewise invalid for obviousness.

The Sporty K9 jersey is undisputably prior art and falls within the scope of the '487 patent.  With respect to the second *Graham* factor, the Sporty K9 jersey has "basically the same" design characteristics as the design claimed in the '487 patent from the perspective of an ordinary observer.  The Sporty K9 jersey is a pet baseball jersey having: a V-shaped collar; two opening for sleeves with cuffs for the two front limbs of the pet; a banded opening at the bottom of the jersey for the hind end portion of the pet; and four buttons extending vertically down the front of the jersey.  All of these features are found in the jersey claimed in the '487 patent.  The differences identified by the plaintiff between the Sporty K9 jersey and the claimed design, in

20

particular the use of mesh and a somewhat shorter and more "tubular" shape, are minor differences or are well known in the prior art.  As defendants point out, use of mesh in pet jerseys, as exemplified by the V2 jersey, was well known in the prior art.  The V2 and Eagles pet jerseys exhibit the same shape as depicted in the claimed design.

Cohen's own subjective views as to whether his design would have been obvious to a designer of ordinary skill in the field of pet jerseys, and as to other secondary considerations of nonobviousness, are not objective or persuasive and are insufficient to create a genuine dispute as to nonobviousness under the third and fourth *Graham* factors.

As with the '488 patent, the Court finds that the '487 patent is directed to an obvious design in view of the prior art.  The design claimed in the '487 patent merely combines features of the prior art and would have been obvious to a designer of ordinary skill in the field.

**Conclusion**

For the reasons discussed above, defendants' motion for summary judgment is granted on the ground that the '488 and '487 patents are invalid under 35 U.S.C. §103(a).  Oral argument is not necessary and, therefore, plaintiff's motion for oral argument is denied.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/31/13

21